**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | |
|---|---|
| **Children's Health Defense, Robert F. Kennedy, Jr., Trialsite, Inc., Creative Destruction Media, LLC, Erin Elizabeth Finn, Jim Hoft, Dr. Ben Tapper, Ben Swann, Dr. Joseph Mercola, Ty Bollinger, and Charlene Bollinger,** | |
| *Plaintiffs*, | No. 2:23-cv-00004-Z (MJK) |
| — against — | |
| **WP Company, LLC (D/B/A The Washington Post), The British Broadcasting Corp., and The Associated Press & Reuters,** | |
| *Defendants.* | |

---

## Brief in Support of The British Broadcasting Corporation's Motion to Dismiss

---

**Reed Smith LLP**
Mark L. Johansen
Edward B. Schwartz
Michelle A. Mantine
Casey J. Olbrantz

*Counsel for Defendant*
*The British Broadcasting Corporation*

TABLE OF CONTENTS

**Table of Authorities** ............................................................................................. **iii**

**Introduction** ........................................................................................................ **1**

**Legal Standards** ................................................................................................ **3**

**Statement of Facts** ............................................................................................ **4**

**Argument** ............................................................................................................ **8**

I.      The BBC Is Not Subject To General Jurisdiction Because It
        Is Not "At Home" In Texas ................................................................... 8

II.     The Complaint Does Not Allege A Sufficient Basis To Confer
        Specific Jurisdiction Over The BBC ................................................. 10

        A.      Plaintiffs Fail To Establish That the BBC Purposefully
                Availed Itself of the Forum ....................................................11

        B.      Plaintiffs' Claims Do Not Arise Out of the BBC's
                Alleged Contacts With the Forum ..........................................12

III.    The Clayton Act Does Not Provide For Personal Jurisdiction
        Because The BBC Does Not Transact Business In This District ............ 13

IV.     Exercising Personal Jurisdiction Over the BBC Would
        Offend Due Process ............................................................................... 16

V.      Plaintiffs Fail to State a Claim for Which Relief Can be Granted ........... 20

**Conclusion** ....................................................................................................... **21**

TABLE OF AUTHORITIES

**CASES**

*Acad. of Allergy & Asthma in Primary Care v. La. Health Serv. & Indem. Co.*,
   2020 U.S. Dist. LEXIS 127000 (E.D. La. July 17, 2020) .................................................. 13, 14

*Access Telecomms., Inc. v. MCI Telecomms. Corp.*,
   197 F.3d 694 (5th Cir. 1999) ................................................................................................. 13

*Architettura Inc. v. DSGN Assocs.*,
   2018 U.S. Dist. LEXIS 118080 (N.D. Tex. July 13, 2018) .................................................. 10

*Asahi Metal Indus. Co. v. Superior Court of Ca.*,
   480 U.S. 102, 115 (1987) ......................................................................................... 17, 18, 19

*Bristol-Myers Squibb Co. v. Superior Court*,
   137 S. Ct. 1773 (2017) ........................................................................................................... 10

*Corr Wireless Communs., L.L.C. v. AT&T, Inc., LLC*,
   907 F. Supp. 2d 793 (N.D. Miss. 2012) ........................................................................... 13, 16

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ............................................................................................................. 8, 9

*Daniel v. Am. Bd. of Emergency Med.*,
   428 F.3d 408 (2d Cir. 2005) ................................................................................................... 13

*Danziger & De Llano, LLP. v. Morgan Verkamp, LLC*,
   24 F.4th 491 (5th Cir. 2022) .................................................................................................. 11

*Dibon Sols., Inc. v. Chugach Alaska Corp.*,
   2008 U.S. Dist. LEXIS 45627 (N.D. Tex. June 10, 2008) .................................................... 18

*Go-Video, Inc. v. Akai Elec. Co., Ltd.*,
   885 F.2d 1406 (9th Cir. 1989) .......................................................................................... 13, 14

*Golf City, Inc. v. Wilson Sporting Goods Co.*,
   555 F.2d 426 (5th Cir. 1977) ................................................................................................. 16

*GTE New Media Services Inc. v. BellSouth Corp.*,
   199 F.3d 1343 (D.C. Cir. 2000) ............................................................................................. 13

*Hazim v. Schiel & Denver Book Publrs.*,
   647 F. App'x 455 (5th Cir. 2016) .......................................................................................... 12

*Head v. Las Vegas Sands, LLC,*
  298 F. Supp. 3d 963 (S.D. Tex. 2018) ........................................................................... 3, 9, 11

*In re Automotive Refinishing Paint Antitrust,*
  358 F.3d 288 (3d Cir. 2004) ................................................................................................... 13

*Johnson v. TheHuffingtonpost.com, Inc.,*
  21 F.4th 314 (5th Cir. 2021) ................................................................................... 10, 11, 12

*Johnston v. Multidata Sys. Int'l Corp,*
  523 F.3d 602 (5th Cir. 2008) .................................................................................... 17, 18, 19

*KM Enters., Inc. v. Glob. Traffic Techs., Inc.,*
  725 F.3d 718 (7th Cir. 2013) .................................................................................................. 13

*Maiden Biosciences, Inc. v. MPM Med., Inc.,*
  2019 U.S. Dist. LEXIS 197429 (N.D. Tex. Nov. 14, 2019) ................................................. 11

*Mgmt. Insights, Inc. v. CIC Enters., Inc.,*
  194 F. Supp. 2d 520 (N.D. Tex. 2001) .............................................................. 13, 14, 15, 16

*Monkton Ins. Servs. v. Ritter,*
  768 F.3d 429 (5th Cir. 2014) .................................................................................................... 9

*Nat'l Ath. Trainers' Ass'n v. Am. Physical Therapy Ass'n,*
  2008 U.S. Dist. LEXIS 70131 (N.D. Tex. Sep. 9, 2008) .......................................... 13, 14, 16

*Revell v. Lidov,*
  317 F.3d 467 (5th Cir. 2002) ................................................................................................... 12

*San Antonio Tel. Co. v. Am. Tel. & Tel. Co.,*
  499 F.2d 349 (5th Cir. 1974) ................................................................................................... 15

*Sangha v. Navig8 Shipmanagement Private Ltd.,*
  882 F.3d 96 (5th Cir. 2018) ...................................................................................... 3, 4, 9, 10, 16

*Stroman Realty, Inc. v. Wercinski,*
  513 F.3d 476 (5th Cir. 2008) ................................................................................................... 15

*Torson v. Hyundai Oilbank Co.,*
  2022 U.S. App. LEXIS 25111 (5th Cir. Sep. 7, 2022) ............................................................. 9

**OTHER AUTHORITIES**

15 U.S.C. § 22 ......................................................................................................  13-15

Bipartisan Policy Center, *Comparison of Competition Law and Policy in the US, EU,*
    *UK, China, and Canada*, December 16, 2021 ................................................... 19

Roy, Bahnidipa, *A Comparative Review of Competition Law Between UK and US*,
    December 9, 2021 ............................................................................................... 20

United Kingdom Office of Communications, *Regulating the BBC's impact on competition*,
    March 29, 2017 ................................................................................................... 20

Defendant the British Broadcasting Corporation ("BBC") submits this Brief in support of its motion to dismiss under Rule 12(b)(2) and 12(b)(6) ("Motion") against Plaintiffs' March 9, 2023 First Amended Complaint (ECF 39) ("Complaint"). The accompanying Appendix contains the Declaration of Jonathan Munro ("Munro Decl.") filed in support of the Motion.

## INTRODUCTION

Whether Plaintiffs have adequately alleged a basis for subjecting the BBC to the jurisdiction of this Court is not a close question. The Complaint's threadbare jurisdictional allegations fail to demonstrate that the BBC, a royally chartered publicly funded news and multimedia service provider based in the United Kingdom, has purposefully availed itself "of the privilege of conducting activities within the forum." Indeed, the BBC has *no* connection to this forum for purposes of any relevant jurisdictional analysis. Plaintiffs have failed to satisfy their burden of alleging the facts required to assert jurisdiction over the BBC under any theory:

First, Plaintiffs do not sufficiently allege general jurisdiction over the BBC. Plaintiffs concede that the BBC is headquartered and chartered in the United Kingdom, and they have not alleged any "exceptional" facts that would render the BBC "at home" in Texas.

Second, Plaintiffs fail to allege a basis for specific jurisdiction over the BBC because the Complaint is devoid of any allegations indicating that the BBC purportedly intentionally availed itself of this forum in connection with the alleged conduct. Nor does the Complaint allege any facts showing that Plaintiffs' claims arose out of any such purposeful contacts with Texas.

Third, there is no basis for personal jurisdiction over the BBC under the Clayton Act. Under the test applied in the Fifth Circuit, such jurisdiction can only be asserted in districts in which venue is proper, and that is not the case here. Simply, the BBC transacts no business in the

Northern District of Texas. Plaintiffs offer only conclusory allegations about a passive news website, www.bbc.com, which has no bearing on venue under the Clayton Act.

Fourth, even if Plaintiffs could carry their burden to show minimum contacts—and they cannot—it would offend traditional notions of fair play and substantial justice to exercise personal jurisdiction over the BBC in this case. Each recognized factor militates for dismissal:

1.      Defending claims in this District necessarily imposes a substantial burden on the BBC because all of its potential party witnesses are based in the United Kingdom, and all three BBC witnesses named in the Complaint are former employees that are not under the BBC's control and not subject to the jurisdiction of this Court;

2.      Texas has no meaningful role or interest in this matter—and the venue does not convenience Plaintiffs—because no Plaintiffs are citizens of Texas, and the Complaint is lacking any allegation that any misconduct took place in Texas, that any specific harm was felt in Texas, or that Texas has any other connection to this suit;

3.      Plaintiffs' own allegations state that the BBC's presence as a defendant is not necessary for Plaintiffs to obtain convenient and effective relief, and Plaintiffs will necessarily be able to obtain sufficient discovery from BBC as a non-party; and

4.      Exercising jurisdiction over the BBC would conflict with the procedural and substantive policies of the United Kingdom and offend the United States' well-established interests of comity. This lawsuit attempts to impose American antitrust law against a publicly funded United Kingdom public service provider, which has a Royal Charter with Parliament that specifically sets forth the BBC's obligations to avoid harming fair and effective competition.

In sum, BBC has no genuine connection to this forum, and it could not have reasonably anticipated being haled into a Texas Court based on its involvement with the TNI.

Separately, even if this Court had personal jurisdiction over the BBC—and it does not—the case should be dismissed because Plaintiffs have failed to state a claim for which relief can be granted, as demonstrated in the brief supporting the motion to dismiss filed by Defendants The Washington Post, The Associated Press, and Reuters (collectively, the "Co-Defendants"), in which the BBC joins and incorporates by reference.

For these reasons, and as demonstrated below and in the Co-Defendants' Rule 12(b)(6) motion, the BBC respectfully requests that it be dismissed from the case with prejudice.

### LEGAL STANDARDS

A foreign defendant can move to dismiss a lawsuit for lack of personal jurisdiction under Rule 12(b)(2). Texas courts apply federal due process analysis to determine whether they have personal jurisdiction, which requires that the foreign defendant (1) have "minimum contacts" through purposeful availment "of the privilege of conducting activities within the forum," and (2) that "exercising jurisdiction is consistent with traditional notions of fair play and substantial justice." *Sangha v. Navig8 Shipmanagement Private Ltd*., 882 F.3d 96, 101 (5th Cir. 2018) (internal quotes omitted).

In opposing a Rule 12(b)(2) motion, Plaintiffs bear the burden of establishing "a *prima facie* case of personal jurisdiction." *Id.* Plaintiffs' jurisdictional allegations cannot be considered if they are "conclusory," "vague," or "overgeneralized." *Id.* at 102. Plaintiffs must establish "personal jurisdiction over each defendant," and their allegations "cannot simply lump" all the defendants together. *Head v. Las Vegas Sands, LLC*, 298 F. Supp. 3d 963, 977 (S.D. Tex. 2018). Jurisdictional allegations that are well-pled and uncontroverted must be accepted as true, but

"such acceptance does not automatically mean that a *prima facie* case for personal jurisdiction has been presented." *Sangha*, 882 F.3d at 101 (cleaned up). Rather, the Court "may consider the contents of the record at the time of the motion," including affidavit evidence. *Id.* If Plaintiffs succeed in setting out a *prima facie* case, then the burden of proof "shifts to the defendant to show that the assertion of jurisdiction is unfair and unreasonable." *Id.* at 102.

STATEMENT OF FACTS

## I.     THE BBC

The BBC is the main public service provider of news and entertainment media in the United Kingdom. Munro Decl. ¶ 4. It broadcasts and publishes news and other media in the United Kingdom via television, radio, and online services, and delivers multimedia news across the globe in more than 40 languages. *Id.* The BBC was established in the United Kingdom through a Royal Charter, and is headquartered in London, United Kingdom, which is its principal place of business. *Id.* ¶ 5.

The BBC is a publicly funded non-profit entity. *Id.* ¶ 6. It is primarily funded by a license fee that is determined by Parliament and paid annually by every household in the United Kingdom that watches or records TV on any channel via any TV service, watches live streaming services, or uses BBC iPlayer. *Id.* ¶ 6. The BBC's Royal Charter restricts the BBC from conducting commercial activities in relation to the media it produces. *Id.* ¶ 7. Rather, commercialization of the BBC's media is the domain of an independent subsidiary, BBC Studios, and BBC Studios' own subsidiaries. *Id.*

BBC Studios is an independent subsidiary of the BBC that is also headquartered and incorporated in London. *Id.* ¶ 8. The BBC and BBC Studios have separate corporate existences, boards of directors, and executive teams, and have no overlapping employees. *Id.* BBC Studios'

management controls that entity's day-to-day decisions, business affairs, and operations. *Id.* All of BBC Studios' subsidiaries are also legally and organizationally separate from the BBC. *Id.* BBC Studios—not the BBC—operates and commercializes the website www.bbc.com outside of the United Kingdom. *Id.* ¶ 9.

The BBC is not qualified to do business in Texas. *Id.* ¶ 11. It does not have any offices, addresses, telephone numbers, property, leases, or bank accounts in Texas. *Id.* One BBC journalist resides in San Antonio, Texas and works remotely there, but the BBC has no other direct connection to the state. *Id.* ¶ 12. The BBC does not conduct business of any kind in the Northern District of Texas. *Id.*

## II.    PLAINTIFFS' CLAIMS

The Complaint broadly alleges that, in "2019 or 2020," each of the Defendants "entered into a self-described 'industry partnership'" named the Trusted News Initiative ("TNI"), along with numerous other non-defendant news organizations and non-defendant "behemoth Internet companies." Complaint ¶¶ 3-4.

The TNI allegedly consists of two groups, which the Complaint calls the "Legacy News Members" and the "Big Tech Members." *Id.* ¶¶ 172-176. The purported "Legacy News Members" include each Defendant and various non-defendant partners including ABC (Australia), Agence France Press (France), CBC/Radio-Canada (Canada), Dawn (Pakistan), the European Broadcasting Union (EBU), the Financial Times (UK), The Hindu (India), Indian Express (India), Information Futures Lab (U.S.), Kompas (Indonesia), The Nation Media Group (Kenya), NDTV (India), NHK (Japan), the Reuters Institute for the Study of Journalism (UK), and SBS (Australia). *Id.* ¶ 297; Munro Decl. ¶ 14. The non-defendant "Big Tech Members" include "Facebook, Google, Twitter, and Microsoft." Complaint ¶¶ 176, 297.

The "Legacy News Members" all allegedly "publish COVID and political news on their websites," and "thus all compete with one another," and allegedly also compete with Plaintiffs "as original-content publishers in the US market for online COVID and political news." *Id.* ¶¶ 180-184, 196. The non-defendant "Big Tech Members" are allegedly "platform gatekeepers" who "possess an overwhelmingly dominant position in the online news market, allowing them to dictate which news publishers receive access to, and which are denied access to, hundreds of millions of news consumers." *Id.* ¶¶ 217-227.

The TNI was allegedly formed "by March 2020," although the Complaint does not allege when, where, or which entities participated in its formation. *Id.* ¶ 255. As described on the BBC's website, the TNI is a "global partnership bringing together organisations across media and technology to tackle harmful disinformation in real time." Munro Decl. ¶ 15. TNI "focuses on moments of potential jeopardy, that could threaten life or the integrity of democracy," and its partners "alert each other to high risk disinformation so that content can be reviewed promptly by platforms, whilst publishers ensure they don't unwittingly share dangerous falsehoods." *Id.*

The Complaint seeks to recast the TNI as an agreement by its partners to exclude "rival news publishers" such as Plaintiffs "from the world's dominant Internet platforms" because Plaintiffs "engage in reporting that challenges and competes with TNI partners' reporting on certain issues relating to COVID-19 and U.S. politics." Complaint ¶ 5. The crux of the TNI's alleged wrongful activity is that the non-defendant "Big Tech Members" (1) "use[d] their dominant platform power in the online news market to censor and silence online news publishers whose reporting was prohibited by the TNI or any of its partners;" (2) "exclude[d] from their platforms news content identified as prohibited by the TNI;" and (3) took "action injuring and disadvantaging publishers of prohibited content by censoring those publishers, demonetizing

them, shadow-banning them, disparaging them, and/or de-platforming them entirely." *Id.* ¶ 289. As a result of TNI's efforts, Plaintiffs were allegedly "shadow-bann[ed], greylist[ed], censor[ed] and de-platform[ed]" by the non-defendant "Big Tech Members" because Plaintiffs published content that the TNI "prohibited." *Id.* ¶¶ 354-356, 464.

Plaintiffs claim that the TNI is a "classic group boycott" that has allegedly "suppressed wholly accurate and legitimate reporting in furtherance of the economic self-interest of its members." *Id.* ¶¶ 9-12. On this basis, Plaintiffs bring causes of action against Defendants for a *per se* and rule of reason violations of the Sherman Act. *Id.* ¶¶ 465-541.

## III.   ALLEGATIONS CONCERNING THE BBC

The Complaint includes no specific allegations of actions purportedly taken by the BBC in connection to Plaintiffs' claims, and contains no non-conclusory allegations that show *any* genuine connection between the BBC and the forum. Where the Complaint does specifically mention the BBC, it is conspicuously silent about *where* any relevant conduct is alleged to have occurred. In fact, the Complaint contains no allegations that the BBC took any actions within the United States, outside of conclusory allegations that the BBC "transacts substantial business in this District and offers its products and services throughout this State," and purportedly "engages in very considerable commercial activity" through the "operation of its U.S. online website, bbc.com, reaching an American audience of over fifty million and transacting substantial business in every American state and district." *Id.* ¶¶ 111, 116; *see also id.* ¶ 178 (alleging that "The Washington Post, the BBC, Reuters and the Associated Press all offer independent online news websites, available throughout the US, in direct competition with each other"). However, these generalized allegations of purported commercial activity are false. Munro Decl. ¶¶ 7-9.

Plaintiffs also repeatedly quote various statements about TNI from web posts that allegedly involve the BBC, but all of those allegations conspicuously lack any indication of *the location* of the alleged conduct, such as the location of the alleged speaker or author. *See* Compliant ¶¶ 19, 189, 195, 254, 256, 257, 259, 260, 274, 291, 332 & 333. That is unsurprising given the nature of TNI's activities and the makeup of its partners, which are primarily foreign. Munro Decl. ¶ 14. Indeed, with the exception of one former employee who now resides in Dubai, all of the BBC's personnel who have ever been involved with running the TNI were and are located in the United Kingdom. *Id.* ¶¶ 16, 19-20. To date, with the exception of a few meetings in London, every TNI meeting has been virtual and hosted from London with limited involvement from any American participants. *Id.* ¶¶ 21-25. Further, to date, each of the delegates from the "Big Tech Members" to TNI's working groups has been based out of the United Kingdom, not the United States. *Id.* ¶ 24. Thus, as corroborated by its silence and threadbare assertions, the Complaint sets out no real connection of any kind between the BBC and this forum.

ARGUMENT

Plaintiffs fail to establish a *prima facie* case for personal jurisdiction over the BBC. The Complaint appears to allege that the Court has both general and specific jurisdiction over the BBC under the Texas long-arm statute, and also that the Court has personal jurisdiction under the Clayton Act. Complaint ¶¶ 116 & 117. In each respect, the Complaint falls short. Separately, Plaintiffs also fail to state a claim for which relief can be granted.

## I.   THE BBC IS NOT SUBJECT TO GENERAL JURISDICTION BECAUSE IT IS NOT "AT HOME" IN TEXAS

General jurisdiction exists "when a foreign corporation's continuous corporate operations within a state are so substantial and of such a nature as to justify suit against it on causes of

action arising from dealings entirely distinct from those activities." *Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014) (cleaned up). "The paradigm all-purpose forums for general jurisdiction are a corporation's place of incorporation and principal place of business." *Id.* While it is possible for a "home" forum to exist in addition to those two paradigms, it is an "exceptional case" where a foreign defendant's operations are "so substantial and of such a nature as to render the corporation at home in that State." *Id.* at n.19. This standard is "incredibly difficult" to meet. *Monkton Ins. Servs. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014).

Plaintiffs plainly do not meet their high burden to establish that the BBC is effectively "at home" in Texas. The Complaint concedes that the BBC "is a royally chartered UK public service corporation with a principal place of business in London." Complaint ¶ 111. Moreover, Plaintiffs fail to allege any non-conclusory facts about the BBC's purported contacts with the forum, much less such any "exceptional" facts.

All that Plaintiffs can muster are non-creditable allegations that the BBC purportedly "transact[s] substantial business in every American state and district" through the supposed "operation of its U.S. online website, bbc.com," and that every defendant supposedly "transacts substantial business in this District and offers its products and services throughout [Texas]." Complaint ¶¶ 111, 116. These conclusory "overgeneralized" allegations cannot be credited, *Sangha*, 882 F.3d at 102, and in any event, they are false. *See* Munro Decl. ¶¶ 7-12.

Moreover, the law is clear that operating a website that is accessible in the forum does not give rise to general jurisdiction. *E.g.*, *Ritter*, 768 F.3d at 432 (finding Cayman defendant's "interactive website" was insufficient to establish general jurisdiction); *Head*, 298 F. Supp. 3d at 977 ("Recent case law within the Fifth Circuit appears to uniformly hold that mere internet presence within a forum does not generate general jurisdiction."). Moreover, the BBC's

independent subsidiary operates and commercializes the website in question, and the law is also clear that courts do not "have general jurisdiction over a foreign corporation due to the contacts of its subsidiaries." *Torson v. Hyundai Oilbank Co.*, 2022 U.S. App. LEXIS 25111, at *11 (5th Cir. Sep. 7, 2022). Nor is the presence of one remote employee in Texas evidence that the BBC has sufficient "continuous and systematic" contacts to support general jurisdiction. *Sangha*, 882 F.3d at 102 (allegations that defendant conducted "substantial" business "routinely" out of multiple Texas ports were insufficient); *Architettura Inc. v. DSGN Assocs.*, 2018 U.S. Dist. LEXIS 118080, at *9 (N.D. Tex. July 13, 2018) ("the presence of an undetermined number of [defendant's] employees in Texas is insufficient to confer general jurisdiction").

This is simply not an exceptional case. Because the BBC is not "at home" in Texas, the Court does not have general jurisdiction.

## II.   THE COMPLAINT DOES NOT ALLEGE A SUFFICIENT BASIS TO CONFER SPECIFIC JURISDICTION OVER THE BBC

Specific jurisdiction exists when the lawsuit "arise[s] out of or relate[s] to the defendant's contacts with the forum." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017) (cleaned up). "In other words, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (cleaned up). Thus, to establish personal jurisdiction, Plaintiffs bear the burden of establishing that: (1) the BBC "purposefully availed itself of the privilege of conducting activities in the forum" and that the BBC's ties to the forum were "purposefully forged"; and (2) Plaintiffs' claims "arise out of or relate to [the BBC's] purposeful contacts." *Johnson v. TheHuffingtonpost.com, Inc.,* 21 F.4th 314, 317-18 (5th Cir. 2021) (quotation omitted). The Complaint fails in both respects.

A.       **Plaintiffs Fail To Establish That the BBC Purposefully Availed Itself of the Forum**

As to the first element of the test for specific jurisdiction, the Complaint contains no well-pled allegations that the BBC purposefully forged relevant contacts with the forum. As demonstrated above, none of Plaintiffs' allegations about the BBC concerning the TNI establish even a glancing connection to Texas. *E.g.,* Complaint ¶¶ 19, 189, 195, 254, 256, 257, 259, 260, 274, 291, 332 & 333. Nor do Plaintiffs allege any facts that would support the conclusion that the BBC intentionally "formed a contact with" Texas through the alleged conduct that gave rise to Plaintiffs' claims. These defects warrant dismissal. *TheHuffingtonpost.com, Inc.*, 21 F.4th at 325 (no specific jurisdiction where plaintiff failed to allege that the defendant purposefully "create[d] the contacts that sustain the forum state's jurisdiction"); *Danziger & De Llano, LLP. v. Morgan Verkamp, LLC*, 24 F.4th 491, 500 (5th Cir. 2022) (no specific jurisdiction where plaintiffs failed to allege that the wrongful conduct "either occurred in Texas or was otherwise meaningfully connected to the state"); *Head*, 298 F. Supp. 3d at 973 (no specific jurisdiction where "allegations fail[ed] to explain where the[] [relevant] actions took place"); *Maiden Biosciences, Inc. v. MPM Med., Inc.*, 2019 U.S. Dist. LEXIS 197429, at *12 (N.D. Tex. Nov. 14, 2019).

Plaintiffs' general allegations about the "TNI" or "Legacy News Members" that do not specifically reference BBC cannot be credited. The Complaint alleges at paragraph 297 that TNI has at least *sixteen* partners, and that the "Legacy News Members" include at least *twelve* partners. However, "[e]ach defendant's contacts with the forum State must be assessed individually," and Plaintiffs bear the burden to "support[] personal jurisdiction over each defendant" without "simply lump[ing]" all the defendants together. *Head*, 298 F. Supp. 3d at 973 (citing *Calder v. Jones*, 465 U.S. 783, 790 (1984)).

Likewise, Plaintiffs' generalized allegations that the BBC "transacts business" and engages in "commercial activity" in the U.S. and Texas through "operation of" an "online website," Complaint ¶¶ 111, 116, are not only conclusory and false, but as demonstrated above, the Fifth Circuit has "held many times" that mere website accessibility "cannot demonstrate purposeful availment." *TheHuffingtonpost.com, Inc.*, 21 F.4th at 325.

### B.      Plaintiffs' Claims Do Not Arise Out of the BBC's Alleged Contacts With the Forum

As to the second requirement for specific jurisdiction, Plaintiffs fail to allege facts revealing how their claims against the BBC arose out of BBC's contacts with the forum. There are simply no allegations in the Complaint that even attempt to connect Plaintiffs' claims to any forum contacts by the BBC, and there is accordingly no conceivable basis for exercising specific jurisdiction. *Hazim v. Schiel & Denver Book Publrs.*, 647 F. App'x 455, 459 (5th Cir. 2016) (no specific jurisdiction where plaintiff did "not even attempt to connect [defendant's] contacts to" each of plaintiff's "claims for unfair competition, unjust enrichment, copyright and trademark infringement, or DTPA violations").

Again, the only allegations that the BBC had any direct contact with the forum are that it generally "transacts business" and engages in "commercial activity" through an "online website." Complaint ¶¶ 111, 116. Not only are these allegations defective for the reasons discussed above, but they are also distinct from the subject matter of Plaintiffs' claims. *TheHuffingtonpost.com, Inc.*, 21 F.4th at 325 (internet commerce is irrelevant to specific jurisdiction if the claim is not about such commerce); *Revell v. Lidov*, 317 F.3d 467, 472 (5th Cir. 2002) ("For specific jurisdiction we look only to the contact out of which the cause of action arises" and do not consider collateral contacts).

For these reasons, Plaintiffs fail to allege a *prima facie* case that the BBC is subject to specific jurisdiction in this forum.

## III.   THE CLAYTON ACT DOES NOT PROVIDE FOR PERSONAL JURISDICTION BECAUSE THE BBC DOES NOT TRANSACT BUSINESS IN THIS DISTRICT

Nor do Plaintiffs' allegations that jurisdiction over the BBC can be established under the Clayton Act find purchase. Complaint ¶¶ 116-117. The relevant provision of the Clayton Act, 15 U.S.C. § 22 ("Section 12"), provides that:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

The plain language of Section 12 is clear. Its first clause states that a corporation can be sued under the antitrust laws "in any district wherein it may be found or transacts business," and it thus establishes the predicate for conferring jurisdiction over a corporation under that provision. Only if that initial venue test is satisfied can a defendant be served "in the district of which it is an inhabitant, or wherever it may be found."

Courts in the Fifth Circuit have uniformly applied Section 12 in this way, and required that proper venue be established as a prerequisite to assessing whether a foreign defendant is subject to personal jurisdiction based on its nationwide contacts. *Corr Wireless Communs., L.L.C. v. AT&T, Inc., LLC*, 907 F. Supp. 2d 793, 799 (N.D. Miss. 2012); *Nat'l Ath. Trainers' Ass'n v. Am. Physical Therapy Ass'n*, 2008 U.S. Dist. LEXIS 70131, at *32-33 (N.D. Tex. Sep. 9, 2008); *Mgmt. Insights, Inc. v. CIC Enters., Inc.*, 194 F. Supp. 2d 520, 532 (N.D. Tex. 2001); *see also Access Telecomms., Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 718 (5th Cir. 1999) (Section 12 "allows for jurisdiction over any federal antitrust suit in any district in which a

defendant transacts business"); *Acad. of Allergy & Asthma in Primary Care v. La. Health Serv. & Indem. Co*., 2020 U.S. Dist. LEXIS 127000, at *9 (E.D. La. July 17, 2020) (same).

This interpretation of Section 12 accords with the majority of circuit courts that have considered the provision's meaning.[1] Thus, courts in the Fifth Circuit have consistently rejected the Ninth Circuit's minority approach, elucidated in *Go-Video, Inc.*, 885 F.2d 1406, which ignores the first clause of Section 12 and holds that a corporation can be subjected to personal jurisdiction merely if it "may be found" in *any* district, even if venue is improper in the district in which the case is pending. Judge Lynn long ago considered and rejected the logic of *Go-Video, Inc.*, and found that it was "contrary to the plain meaning of the statute" and would arbitrarily permit a Texas corporation to, for example, "hale an Alaskan corporate defendant into [Texas'] courts even though the defendant has had no dealings at all with the forum state." *Mgmt. Insights, Inc.*, 194 F. Supp. 2d at 532. Judge Fish adopted the same reasoning in *Nat'l Ath. Trainers' Ass'n* and found that there could be no personal jurisdiction under Section 12 where a defendant "does not inhabit the district, is not 'found' in the district, and … does not transact business in this district." 2008 U.S. Dist. LEXIS 70131, at *32-33. Thus, Plaintiffs must prove that venue is proper before they may otherwise benefit from Section 12.

Venue is proper under Section 12 if the BBC "transacts business" in this District. *Mgmt. Insights, Inc.*, 194 F. Supp. 2d at 532 ("inhabitant" means "incorporated," and being "found" is a higher burden than "transacts business"). An entity "transacts business" where "a *substantial business activity* is performed within the jurisdiction with continuity of character, regularity,

---

[1] *GTE New Media Services Inc. v. BellSouth Corp.*, 199 F.3d 1343 (D.C. Cir. 2000); *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408 (2d Cir. 2005); *KM Enters., Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718 (7th Cir. 2013); *but see Go-Video, Inc. v. Akai Elec. Co., Ltd.*, 885 F.2d 1406 (9th Cir. 1989); *In re Automotive Refinishing Paint Antitrust*, 358 F.3d 288 (3d Cir. 2004).

contemporaneous with the service and not looking toward cessation of business." *Id.* (emphasis

added). The Court adopts "the point of view of the average businessman" in determining whether

a corporation "transacts business of a substantial character" in the District, and assesses whether

the corporation engaged in activity such as "purchasing" and "sales." *Acad. of Allergy & Asthma*,

2020 U.S. Dist. LEXIS 127000, at *9 (quoting *Black v. Acme Markets, Inc.*, 564 F.2d 681, 687

(5th Cir. 1977)). The Fifth Circuit has also clarified that the activities of a defendant's

subsidiaries cannot confer venue for Section 12 purposes unless there is evidence of "a total

disregard for the separate corporate entities." *San Antonio Tel. Co. v. Am. Tel. & Tel. Co.*, 499

F.2d 349, 350 (5th Cir. 1974).

      Venue is not proper because the BBC does not transact business in this District.

Plaintiffs' only relevant non-conclusory allegation is that venue is proper because the BBC

purportedly operates "its U.S. online website, bbc.com," which happens to be accessible in the

District. Complaint ¶ 111. However, as demonstrated above, while the BBC does publish content

to that website, it is operated and commercialized in the United States exclusively by the BBC's

independent subsidiary. Munro Decl. ¶¶ 8-9. Thus, the activities of that website cannot serve as

the basis for venue. *San Antonio Tel. Co.*, 499 F.2d at 350; *see also Stroman Realty, Inc. v.

Wercinski*, 513 F.3d 476, 483 n.6 (5th Cir. 2008) (commenting that "business" means a

"commercial enterprise carried on for profit" for purposes of Texas' long-arm statute). But even

if the BBC was involved with commercializing that website in some way (it is not), no

"commercial transactions" occur on it. Munro Decl. ¶ 9. At most, BBC Studios—not the BBC—

sells advertising space to third parties. *Id.*

      In sum, the BBC does not conduct business transactions of any kind in the Northern

District of Texas, much less business of a substantial character as required. It is not qualified to

do business in Texas, nor does it have any offices, addresses, telephone numbers, employees, property, leases, bank accounts, or registered agents in this District. *Id.* ¶¶ 10-12.

Because the "average businessman" has no reasonable basis to determine that the BBC carries on "substantial business activity" through commercial transactions in the District, venue is improper under Section 12. *Mgmt. Insights, Inc.*, 194 F. Supp. 2d at 532 (defendant did not "transact business" where it had multiple clients in the district that made up about "two percent of [its] business"); *Nat'l Ath. Trainers' Ass'n*, 2008 U.S. Dist. LEXIS 70131, at *32-33 (professional association did not "transact business" where it had "seven hundred dues-paying members" in Texas, engaged in "internet sales" in Texas, had a subsidiary located in Texas, and awarded research grants to Texas residents); *Corr*, 907 F. Supp. 2d at 799 (finding defendant AT&T entity did not "transact business" based on affidavit stating that the entity "does not conduct business in Mississippi, is not registered to conduct business in Mississippi, and maintains no registered agent in Mississippi"; noting defendant entity had subsidiary in Mississippi, but that the defendant did "not itself own equipment or maintain any property or employees in Mississippi"); *Golf City, Inc. v. Wilson Sporting Goods Co.*, 555 F.2d 426, 437 (5th Cir. 1977) (Professional Golfers' Association did not "transact[] business" in district where it had member residents, advertised in a golf magazine with local distribution, received membership applications from residents, and held professional events).

Because venue is improper, personal jurisdiction over the BBC is unavailable under the Clayton Act.

## IV.   EXERCISING PERSONAL JURISDICTION OVER THE BBC WOULD OFFEND DUE PROCESS

Even where a plaintiff establishes a *prima facie* case of personal jurisdiction, courts must nonetheless decline to exercise personal jurisdiction where it would be inconsistent "with

traditional notions of fair play and substantial justice," and, therefore, would violate due process. *Sangha*, 882 F.3d at 101. Such interests would be offended were the Court to exercise personal jurisdiction over the BBC in this case.

For purposes of analyzing whether the exercise of personal jurisdiction is consistent with due process, Fifth Circuit courts normally consider four factors: "(1) the burden on the defendant; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the shared interest of the several states." *Johnston v. Multidata Sys. Int'l Corp*, 523 F.3d 602, 615 (5th Cir. 2008). However, "when foreign defendants are involved," the fourth factor instead "consider[s] the procedural and substantive policies of other nations whose interests are affected by the assertion of jurisdiction by the [forum]." *Id.* (quoting *Asahi Metal Indus. Co. v. Superior Court of Ca.*, 480 U.S. 102, 115 (1987)).

Here, each factor militates for a finding that exercising jurisdiction over the BBC would be inconsistent "with traditional notions of fair play and substantial justice."

***Burden on the BBC.*** Each of the BBC's current and former employees who were involved in running the TNI are located in the United Kingdom. Munro Decl. ¶¶ 16, 19-20. Further, each of the three BBC-affiliated persons identified in the Complaint no longer work for the BBC, *id.* ¶ 19, and are thus not under its control. Moreover, the vast majority of the TNI's regular working group participants, including all the delegates from the "Big Tech Members" to the TNI working group, are also located abroad. *Id.* ¶ 24. "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi*, 480 U.S. at 114.

The Fifth Circuit recently found that compelling a Canadian company to defend itself in Texas posed a "severe burden" because, "[i]n addition to the regular burdens of defending oneself in a foreign legal system," such defendant "would not have compulsory access to many of the witnesses and evidence necessary to defend itself." *Johnston*, 523 F.3d at 617. The same considerations are present here, although the burdens here are even more compelling given the United Kingdom's comparatively greater distance from Amarillo. This factor weighs heavily against exercising personal jurisdiction over the BBC.

*Texas' Interest in this Case.* Texas has no meaningful role or interest in this matter, and, by any measure, it has substantially less of an interest than any jurisdiction, such as New York or the District of Columbia, in which any of the parties reside. Not one of Plaintiffs alleges that it is a citizen of Texas, and the Complaint is devoid of any allegation that any specific misconduct took place in Texas, that any specific harm was felt in Texas, or that Texas has any other special connection to the lawsuit. Thus, "Texas has, at most, a minimal interest in adjudicating the dispute." *Johnston*, 523 F.3d at 617 (noting none of the plaintiffs were Texas residents and the allegedly tortious acts did not take place in Texas); *Dibon Sols., Inc. v. Chugach Alaska Corp.*, 2008 U.S. Dist. LEXIS 45627, at *11 (N.D. Tex. June 10, 2008) (finding Texas judicial system had "little interest in a resolving" disputes between California and Alaska corporations). Further, as in *Asahi*, it is "not at all clear" that United States law "should govern" questions of competition law concerning a royally chartered, publicly funded United Kingdom public service provider like the BBC. *Asahi*, 480 U.S. at 115.

*Plaintiffs' Interest in Obtaining Convenient and Effective Relief*. According to Plaintiffs' own allegations, the BBC's presence as a defendant is not necessary for Plaintiffs to obtain convenient and effective relief. Complaint ¶¶ 120-122 (alleging all TNI partners are

jointly and severally liable, that "each Defendant is liable for all of Plaintiffs' damages," and "joinder of other TNI members is not necessary"). Indeed, if this case were litigated to conclusion, Plaintiffs will necessarily have engaged in a large amount of domestic and international third-party discovery concerning numerous TNI partners, including the "Big Tech Members." There is no good reason that the BBC should arbitrarily be subjected to personal jurisdiction as a defendant in a District in which it has no connection when Plaintiffs are capable of obtaining adequate discovery from the BBC as a third party. *See* ECF 15 (finding that the BBC is susceptible to service through the Hague Convention). Moreover, this factor also supports dismissal because not one of the eleven Plaintiffs resides in Texas. *Asahi*, 480 U.S. at 114-116 (plaintiff's interests are "slight" when they are not residents of the forum).

       **The United Kingdom's Procedural and Substantive Policies**. Finally, exercising jurisdiction over the BBC would conflict with the procedural and substantive policies of the United Kingdom and may offend the United States' well-established interests of comity. This lawsuit attempts to impose foreign antitrust law against a publicly funded United Kingdom public service provider, which has a Royal Charter with Parliament that specifically sets forth the BBC's obligations to avoid harming fair and effective competition. Munro Decl. ¶ 5. The United Kingdom has its own comprehensive competition law regime, and necessarily has its own policy interests in regulating allegedly anticompetitive conduct that takes place within its own borders. *See, e.g.,* Bipartisan Policy Center, *Comparison of Competition Law and Policy in the US, EU, UK, China, and Canada*, December 16, 2021, *available at* https://bipartisanpolicy.org/blog/comparison-of-competition-law-and-policy-in-the-us-eu-uk-china-and-canada/; Roy, Bahnidipa, *A Comparative Review of Competition Law Between UK and US*, December 9, 2021, *available at* https://lawbhoomi.com/a-comparative-review-of-competition-law-between-uk-and-us/. The

United Kingdom's interest in regulating such conduct is particularly intense with respect to publicly chartered companies such as the BBC, which is subject not only to general competition law but a bespoke competition regulation regime. *See, e.g.*, United Kingdom Office of Communications, *Regulating the BBC's impact on competition*, March 29, 2017, *available at* https://www.ofcom.org.uk/__data/assets/pdf_file/0026/99503/BBC-competition-framework.pdf.

As the Supreme Court cautioned in *Asahi*, "Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." 480 U.S. at 115 (concluding that jurisdiction would be "unreasonable and unfair" given the "international context," and because of "the heavy burden on the alien defendant, and the slight interests of the plaintiff and the forum State"); *Johnston*, 523 F.3d at 617 (finding personal jurisdiction unreasonable in part because foreign countries' internal policies were necessarily affected by the litigation). Such care and caution should be exercised here, and the Court should grant the BBC's motion and dismiss the claims against it with prejudice.

## V.   PLAINTIFFS FAIL TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED

Separately, even if this Court had personal jurisdiction over the BBC—and it does not—the case should be dismissed because Plaintiffs have failed to state a claim for which relief can be granted. To this end, the BBC incorporates by reference and joins in full the arguments advanced and authority cited by the Co-Defendants in their Rule 12(b)(6) motion to dismiss that is being filed contemporaneously, which is equally applicable to the claims against the BBC.[2]

---

[2] Concerning the Co-Defendants' separate motion to transfer that is also being filed contemporaneously, the BBC would consent to a transfer of this action to the United States District Court for the District of Columbia or for the Southern District of New York, and, if the action is transferred, would not contest personal jurisdiction in either forum for purposes of this case.

## CONCLUSION

For the foregoing reasons, the BBC respectfully requests that it be dismissed from the case with prejudice.

Respectfully Submitted:

Dated:   April 18, 2023
            Dallas, Texas

**REED SMITH LLP**

*/s/ Mark L. Johansen*
Mark L. Johansen
Tex. Bar ID 10670240
2850 N. Harwood Street
Suite 1500
Dallas, TX, 75201
469-680-4200
mjohansen@reedsmith.com

Edward B. Schwartz
(*pro hac vice forthcoming*)
1301 K Street, N.W.
Suite 1000, East Tower
Washington, D.C., 20005
202-414-9200
eschwartz@reedsmith.com

Michelle A. Mantine
(*pro hac vice forthcoming*)
Reed Smith Centre, 225
Fifth Avenue
Pittsburgh, PA, 15222
412-288-3131
mmantine@reedsmith.com

Casey J. Olbrantz
(*pro hac vice forthcoming*)
599 Lexington Avenue
New York, NY 10022
212-521-5400
colbrantz@reedsmith.com

*Counsel for The British*
*Broadcasting Corporation*