# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHEN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| CHILDREN'S HEALTH DEFENSE, | ) | |
| ROBERT F. KENNEDY, JR., TRIALSITE, | ) | |
| INC., CREATIVE DESTRUCTION | ) | |
| MEDIA, LLC, ERIN ELIZABETH FINN, | ) | |
| JIM HOFT, DR. BEN TAPPER, BEN | ) | |
| SWANN, DR. JOSEPH MERCOLA, TY | ) | |
| BOLLINGER & CHARLENE | ) | |
| BOLLINGER, | ) | |
| | ) | |
| *Plaintiffs,* | ) | Civil Action No. 2:23-cv-00004-Z |
| v. | ) | |
| | ) | |
| WP COMPANY LLC D/B/A THE | ) | |
| WASHINGTON POST, THE BRITISH | ) | |
| BROADCASTING CORP., THE | ) | |
| ASSOCIATED PRESS, & REUTERS, | ) | |
| | ) | |
| *Defendants*. | | |

## BRIEF IN SUPPORT OF THE ASSOCIATED PRESS, REUTERS NEWS & MEDIA INC., AND WP COMPANY LLC'S MOTION TO TRANSFER

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ............................................................................................................... 3

    A.    None of the Plaintiffs Reside Within the Northern District of
Texas, or Anywhere in Texas ................................................................ 3

    B.    No Defendant Is Headquartered or Has Its Principal Place of
Business in Texas .................................................................................. 3

    C.    The Operative Facts of the Lawsuit Did Not Occur in Texas ................ 5

ARGUMENT .................................................................................................................... 6

I.    PLAINTIFFS COULD HAVE BROUGHT THIS ACTION IN THE
SOUTHERN DISTRICT OF NEW YORK, OR ALTERNATIVELY,
THE DISTRICT OF COLUMBIA ............................................................... 7

II.    PLAINTIFFS' CHOICE OF FORUM IS ENTITLED TO NO
DEFERENCE ................................................................................................. 8

III.    THE 1404(A) FACTORS STRONGLY SUPPORT TRANSFER ............................ 9

    A.    The Private Factors Support Transfer ................................................ 10

        1.    Access to Sources of Proof ...................................................... 10

        2.    Availability of Compulsory Process To Secure Witness
Attendance ................................................................................. 11

        3.    Witness Convenience and Access ........................................... 13

        4.    Other Practical Considerations—Lack of Personal
Jurisdiction over the BBC ........................................................ 19

    B.    The Public Factors Support Transfer ................................................. 20

        1.    Court Congestion ...................................................................... 20

        2.    Local Interest ............................................................................ 21

        3.    Familiarity with Law ............................................................... 22

        4.    Conflict of Laws ...................................................................... 23

CONCLUSION ................................................................................................................ 23

## <u>TABLE OF AUTHORITIES</u>

### CASES

*All. Transp. & Logistics, LLC v. G&J Truck Sales, Inc.*, No. 3:20-CV-3451-B, 2021 WL 5882820 (N.D. Tex. Dec. 13, 2021) ................................................................21, 22

*Allcapcorp Ltd. Co. v. CHC Consulting*, No. 3:17-CV-0757-S-BH, 2019 WL 417995 (N.D. Tex. Jan. 10, 2019), *report and recommendation adopted*, No. 3:17-CV-0757-S-BH, 2019 WL 415819 (N.D. Tex. Feb. 1, 2019)................................................13

*Ayala v. Waste Mgmt. of Ariz., Inc.*, No. CV H-19-196, 2019 WL 2085106 (S.D. Tex. May 10, 2019)................................................................................................22

*CUPP Cybersecurity LLC v. Symantec Corp.*, No. 3:18-CV-01554-M, 2019 WL 1070869 (N.D. Tex. Jan. 16, 2019)................................................................................21, 22

*Datamedia Comput. Serv., Inc. v. AVM Corp.*, 441 F.2d 604 (5th Cir. 1971)................................7

*Def. Distributed v. Bruck*, 30 F.4th 414 (5th Cir. 2022) ........................................................19, 20

*Fausto v. Parko Grp., LLC*, No. 3:18-CV-00323, 2019 WL 6686678 (S.D. Tex. Oct. 31, 2019) ..............................................................................................................14

*Fin. Cas. & Sur., Inc. v. Zouvelos*, No. H-11-2509, 2012 WL 2886861 (S.D. Tex. July 13, 2012) ..............................................................................................................19

*Great-W. Life & Annuity Ins. Co. v. Graves*, No. 09-CV-1602-F, 2010 WL 11582977 (N.D. Tex. Mar. 18, 2010) ..............................................................................1, 8, 9

*Greiner v. Am. Motor Sales Corp.*, 645 F. Supp. 277 (E.D. Tex. 1986) .........................................9

*In re Volkswagen AG (Volkswagen I)*, 371 F.3d 201 (5th Cir. 2004)...........................6, 13, 21, 22

*In re Volkswagen of Am., Inc. (Volkswagen II)*, 545 F.3d 304 (5th Cir. 2008) ..............................6

*InfoGation Corp. v. Google LLC*, No. 6:20-CV-00366-ADA, 2021 WL 5547070 (W.D. Tex. Apr. 29, 2021)................................................................................................20

*Kaneka Corp. v. SKC Kolon PI, Inc.,* No. 1:10-CV-430, 2011 WL 13134647 (E.D. Tex. Mar. 30, 2011)................................................................................................13, 17

*LeBlanc v. C.R. England, Inc.*, 961 F. Supp. 2d 819 (N.D. Tex. Aug. 13, 2013)........................22

*Mgmt. Insights, Inc. v. CIC Enters., Inc.*, 194 F. Supp. 2d 520 (N.D. Tex. 2001) ........................7

*Mid-Continent Cas. Co. v. Petroleum Sols., Inc.*, 629 F. Supp. 2d 759 (S.D. Tex. 2009) ............14

*Modisett v. Delek Refin., Ltd.*, No. 2:18-CV-00389-JRG-RSP, 2019 WL 2395377 (E.D. Tex. June 5, 2019).................................................................................22

*Monsanto Co. v. Ledbetter*, No. 3:07-CV-1881-N, 2008 WL 11347430 (N.D. Tex. Mar. 10, 2008) ...............................................................................................9

*Moss v. Lockheed Martin Corp.*, No. 3:10-cv-1659-M, 2011 WL 197624 (N.D. Tex. Jan. 18, 2011) ...............................................................................................17

*Mt. Hawley Ins. Co. v. TFP Properties. III, LLC*, No. 3:18-CV-00659-K, 2018 WL 10419785 (N.D. Tex. Aug. 29, 2018) ...............................................11, 13

*Patrick v. Martin*, No. 2:16-CV-216-D-BR, 2020 WL 4040969 (N.D. Tex. July 16, 2020) (Kacsmaryk, J.) ............................................................................17

*Potts v. Cameron Offshore Boats, Inc.*, 401 F. Supp. 2d 733 (S.D. Tex. 2005) ...........................18

*Qualls v. Prewett Enters. Inc.*, 594 F. Supp. 3d 813 (S.D. Tex. 2022)....................................1, 12

*Robertson v. Kiamichi R. Co.*, 42 F. Supp. 2d 651 (E.D. Tex. 1999)...........................................23

*Robertson v. M/V Cape Hunter*, 979 F. Supp. 1105 (S.D. Tex. 1997) .......................................8, 9

*Rockefeller Univ. v. Centocor, Inc.*, No. 2-04-CV-168 (TJW), 2005 WL 8160534 (E.D. Tex. Mar. 21, 2005) ................................................................................18

*Rodriguez v. Granite Servs. Int'l, Inc.*, No. 2:20-CV-274-Z, 2021 WL 10315900 (N.D. Tex. July 6, 2021) ............................................................................ *passim*

*Rogers v. Burlington N. Santa Fe Corp.*, No. 2-04-CV-254 (TJW), 2005 WL 8161063 (E.D. Tex. Jan. 31, 2005) .......................................................................23

*Rosemond v. United Airlines, Inc.*, No. H-13-2190, 2014 WL 1338690 (S.D. Tex. Apr. 2, 2014) ...........................................................................................14

*Seramur v. Fed. Ins. Co.*, No. 3:19-CV-1678-B, 2019 WL 3253369 (N.D. Tex. July 19, 2019) ...............................................................................................8

*Siverston v. Clinton*, No. 3:11-CV-0836-D, 2011 WL 4100958 (N.D. Tex. Sept. 14, 2011) ...............................................................................................9

*TitanUrbi21, LLC v. GS Oilfield Servs., LLC*, No. 2:20-CV-069-Z, 2020 WL 5066943 (N.D. Tex. Aug. 27, 2020) ...............................................................................22

*Uniloc USA, Inc. v. Activision Blizzard, Inc.*, Nos. 6:13-cv-256, 6:13-cv-259, 2014 WL 11609813 (E.D. Tex. July 16, 2014)...............................................................10

*USPG Portfolio Two, LLC v. John Hancock Real Est. Fin., Inc.*, No. 3:10-CV-2466-D, 2011 WL 1103372 (N.D. Tex. Mar. 25, 2011) ...............................................20

*Vargas v. Seamar Divers Int'l, LLC*, No. 2:10-CV-178-TJW, 2011 WL 1980001 (E.D. Tex. May 20, 2011)..........................................................................................................13

*Weinstein v. UGS Corp.*, No. 2:07-CV-173 (TJW), 2007 WL 3118363 (E.D. Tex. Oct. 22, 2007) ....................................................................................................................2, 19

*Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-CV-4387-K, 2015 WL 13870507 (N.D. Tex. July 23, 2015) ...............................................................................................11

## STATUTES AND RULES

12 U.S.C. § 22 ...................................................................................................................7

15 U.S.C. § 15 ...................................................................................................................7

15 U.S.C. § 22 ...............................................................................................................6, 7

15 U.S.C. § 26 ...................................................................................................................7

28 U.S.C. 1331 ..............................................................................................................6, 7

28 U.S.C. § 1337 ...............................................................................................................7

28 U.S.C. § 1404(a) .................................................................................................1, 6, 9

Fed. R. Civ. P. 45(c)(1)(A) .............................................................................................11

## INTRODUCTION

Almost a dozen plaintiffs, none of whom live or are based or incorporated in Texas, bring this lawsuit against a group of media entities, none of which are incorporated in or have their principal place of business in Texas.  Plaintiffs allege anticompetitive conduct in connection with the Defendants' alleged participation in the Trusted News Initiative ("TNI"), which did not take place in Texas.  The key underlying events in this case all took place far away from the Northern District of Texas: The supposedly anticompetitive Trusted News Initiative was created at the British Broadcasting Corporation ("BBC") offices in the United Kingdom, and Defendants' alleged participation in the Trusted News Initiative occurred from their offices in New York, the District of Columbia, and London.  Pursuant to 28 U.S.C. § 1404, there is "good cause" to transfer this case to the District Court for the Southern District of New York, or in the alternative, to the District of Columbia.  Such a transfer would, among other considerations, maximize witness convenience and avoid the need to sever the case against the BBC due to lack of personal jurisdiction over the BBC in this forum.

First, because the Northern District of Texas is not Plaintiffs' home nor the location of any of the operative facts, Plaintiffs' choice to file suit here is entitled to "no deference."  *Great-W. Life & Annuity Ins. Co. v. Graves*, No. 09-CV-1602-F, 2010 WL 11582977, at *1 (N.D. Tex. Mar. 18, 2010).

Second, the relevant Section 1404(a) private- and public-interest factors strongly favor transfer.  28 U.S.C. § 1404(a).  Specifically, all four private-interest factors and one public-interest factor support transfer, while the other three public-interest factors are neutral.  Of particular significance, "the most important factor" of witness convenience warrants transfer.  *See Qualls v. Prewett Enters. Inc.*, 594 F. Supp. 3d 813, 824 (S.D. Tex. 2022) (citation omitted).  No parties or witnesses live in Texas.  And the overwhelming majority of likely defense witnesses live in New

York, the District of Columbia, or London, as do many nonparty witnesses, who are otherwise spread across the globe.  Accordingly, transfer to the Southern District of New York or the District of Columbia would serve the convenience of nearly all witnesses, including at least some of the Plaintiffs, who are located in the New York area.  Because "[t]ransferring the case . . . will be significantly more convenient for the vast majority, if not all, [of the] material witnesses in this case[, t]his factor heavily favors transfer."  *Weinstein v. UGS Corp.*, No. 2:07-CV-173 (TJW), 2007 WL 3118363, at *3 (E.D. Tex. Oct. 22, 2007).

If the Court grants the BBC's motion to dismiss for lack of personal jurisdiction, filed concurrently with this motion, *see* ECF No. 51, then another particularly significant factor in this case is the need to sever the case against BBC if the rest of the case were to remain in this district. As this Court recognized in *Rodriguez*, severance of an important party "would be inefficient and delay judicial proceedings."  *Rodriguez v. Granite Servs. Int'l, Inc.*, No. 2:20-CV-274-Z, 2021 WL 10315900, at *3 (N.D. Tex. July 6, 2021) (Kacsmaryk, J.).  This "problem would be avoided and judicial economy would be served by transfer," *id.*, to either the District of Columbia, which has jurisdiction over all Defendants under the Clayton Act, as each of them transacts business in and/or is an inhabitant of the District, or the Southern District of New York, which has jurisdiction over The AP, Reuters, and the Post under the Clayton Act, and where, upon transfer, the BBC would not contest jurisdiction for purposes of this action.  *See* Brief in Support of The BBC's Motion To Dismiss ("BBC Motion"), ECF. No. 52 at 20 n.2.

Accordingly, the District Court for the Southern District of New York or, in the alternative, the District Court for the District of Columbia is "clearly [a] more convenient" venue, and a transfer is "in the interests of justice."  *Rodriguez*, 2021 WL 10315900, at *2 (citation omitted).

# BACKGROUND[1]

### A.   None of the Plaintiffs Reside Within the Northern District of Texas, or Anywhere in Texas

None of the eleven Plaintiffs in this case live in or are incorporated or based in either the Northern District of Texas or anywhere in Texas.  Children's Health Defense is incorporated in Georgia and headquartered in New Jersey.  ECF. No. 39, Am. Compl. ("Complaint" or "AC") at 8, ¶ 39.  Robert F. Kennedy, Jr. is a New York resident.  *Id.* at 9, ¶ 43.  TrialSite, Inc. is incorporated and headquartered in Utah.  *Id.* at 10, ¶ 41.[2]  Creative Destruction Media, LLC is incorporated and headquartered in Wyoming.  *Id.* ¶ 52.  Erin Elizabeth Finn is a Florida resident.  *Id.* ¶ 60.  Jim Hoft is a Missouri resident.  *Id.* ¶ 74.  Dr. Ben Tapper is a Nebraska resident.  *Id.* ¶ 68.  Ben Swann is a Georgia resident.  *Id.* ¶ 86.  Ty and Charlene Bollinger are Tennessee residents.  *Id.* ¶ 95.  Finally, while the Complaint does not provide Dr. Joseph Mercola's location, on information and belief, he is a resident of Florida.  *See id.* ¶ 102 (identifying mercola.com as his website, which states that Mercola's headquarters are located in Cape Coral, Florida).

### B.   No Defendant Is Headquartered or Has Its Principal Place of Business in Texas

All of the Defendants are both incorporated and have their principal places of business outside of Texas.  WP Company LLC d/b/a The Washington Post ("the Post") is a Delaware limited liability company headquartered in the District of Columbia.  Ex. A, Declaration of Cameron Barr ("Post Decl.") ¶ 3; AC ¶ 110.  The Associated Press ("The AP") is incorporated in

---

[1] Additional factual background of this case is discussed in more detail in Defendants' Rule 12(b)(6) Motion To Dismiss and the BBC's Motion To Dismiss (ECF No. 51), which Defendants incorporate by reference.

[2] The paragraph numbering in the Complaint repeats paragraphs 41 through 49.  AC at 10.  In order to avoid confusion, citations to paragraphs 41 through 49 also include page numbers.

New York and headquartered in New York, N.Y.  Ex. B, Decl. of John Daniszewski ("AP Decl.")

¶ 4; AC ¶ 112.  Reuters News & Media Incorporated ("Reuters") is incorporated in Delaware and

headquartered in New York, N.Y.  Ex. C, Decl. of Jane Barrett ("Reuters Decl.") ¶ 4; AC ¶ 113.

The BBC was established in the United Kingdom through a Royal Charter, and its principal place

of business is London.  Appendix For The BBC's Motion to Dismiss, ECF No. 53, Decl. of

Jonathan Munro ("BBC Decl.") ¶ 5; AC ¶ 111.  The Post, The AP, and Reuters all have offices in

New York, N.Y.  Post Decl. ¶ 4; Reuters Decl. ¶ 4; AP Decl. ¶ 4.  And all Defendants or their

parents have offices in the District of Columbia.  Post Decl. ¶ 3; Reuters Decl. ¶ 5; AP Decl. ¶ 5;

BBC Decl. ¶ 10.

All of Defendants' potential witnesses with knowledge of the Trusted News Initiative are

located outside of Texas.  The three former BBC-affiliated individuals named in the Complaint—

Tony Hall, Jamie Angus, and Jessica Cecil, *see, e.g.*, AC ¶¶ 254, 259–260, 274—are located

outside of the United States.  Tony Hall and Jessica Cecil are believed to be residents of the United

Kingdom, and Jamie Angus is believed to be a resident of Dubai.  BBC Decl. ¶ 19.  Similarly, all

of the BBC's other personnel who have been involved with running the Trusted News Initiative

live in and work out of the United Kingdom.  *Id.* ¶ 16.

The Post's liaisons to the Trusted News Initiative, Greg Barber and later Peter Wallsten,

and its Senior Managing Editor, Cameron Barr, are all residents of the District of Columbia area

and work (or worked) in the Post's District of Columbia office.  Post Decl. ¶¶ 7–10, 12.  The AP's

liaisons to the Trusted News Initiative, John Daniszewski and Barbara Whitaker, are residents of

New York, N.Y. (or within 100 miles thereof) and work in The AP's New York, N.Y. office.  AP

Decl. ¶¶ 6, 10–12.  One of Reuters' liaisons to the Trusted News Initiative, Jane Barrett, is a

resident of London and works in Reuters' London office, while another of Reuters' liaisons to the

Trusted News Initiative, Stephanie Burnett, is a resident of the Netherlands.  Reuters Decl. ¶¶ 2, 9.

As for nonparty witnesses who represented platforms (i.e., Google, Meta, Microsoft, and Twitter) at Trusted News Initiative meetings ("platform witnesses"), AC ¶ 3, these individuals are not located in Texas, either.  To the contrary, all TNI representatives from these platforms who materially participated in the TNI reside in the United Kingdom.  BBC Decl. ¶ 24.

### C.    The Operative Facts of the Lawsuit Did Not Occur in Texas

Similarly, all operative facts concerning Defendants occurred far away from Texas, and primarily in London, New York and/or the District of Columbia  The Trusted News Initiative was formed and led by the BBC in the United Kingdom.  BBC Decl. ¶ 13, 16.  The Trusted News Initiative meetings and summits largely took place virtually, while a small number of in-person meetings took place in the United Kingdom.  *Id.* ¶¶ 21–23.  Defendants did not participate in any Trusted News Initiative virtual meetings or events while physically located in Texas.  *See* Post Decl. ¶ 13; AP Decl. ¶ 15; Reuters Decl. ¶¶ 13, 18; BBC Decl. ¶ 17.  To the extent the Post participated in the Trusted News Initiative, it did so from the District of Columbia; to the extent The AP participated, it did so from in or around New York, N.Y.; and to the extent Reuters participated, it did so from London, the Netherlands, and/or New York.  *See* Post Decl. ¶¶ 7–10; AP Decl. ¶ 14; Reuters Decl. ¶¶ 9–11.  Meanwhile, nonparties such as platforms generally participated from the United Kingdom as well.  *See* BBC Decl. ¶ 24.  Other non-defendant participants in the Trusted News Initiative (such as other news organizations) participated from around the world, including from the United Kingdom, Ireland, Canada, France, Switzerland, Netherlands, Kenya, South Africa, Australia, Pakistan, India, Indonesia, and Japan.  *See id.* ¶¶ 14, 23, 25.

The Complaint does not contain any credible allegations that any conduct by any Defendant, let alone any significant conduct, took place in Texas, nor does it identify *any* material witnesses located in Texas.

## ARGUMENT

The federal transfer statute provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a); *see Rodriguez*, 2021 WL 10315900, at *1; *In re Volkswagen of Am., Inc.* (*Volkswagen II*), 545 F.3d 304, 307 n.1 (5th Cir. 2008) (en banc) (citations omitted).

Analysis under § 1404(a) is a two-step inquiry that first asks if the case could have initially been brought in the proposed transferee court. This inquiry looks at both jurisdiction and venue. Subject matter jurisdiction over a case is proper when there is a federal question raised on the face of the complaint, *i.e.*, when the action arises under the laws of the United States. 28 U.S.C. § 1331. Pursuant to the Clayton Act, venue and personal jurisdiction are proper where a defendant is "an inhabitant," "may be found," or "transacts business." 15 U.S.C. § 22.

Second, the party seeking transfer has the burden of proving that there is "good cause" for transfer based on a balance of four private- and four public-interest factors to prevail on a motion to transfer venue. *Rodriguez*, 2021 WL 10315900, at *1 (citing *Volkswagen II*, 545 F.3d at 314–15). "The four private interest factors are '(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious[,] and inexpensive.'" *Id.* at *2 (quoting *In re Volkswagen AG* (*Volkswagen I*), 371 F.3d 201, 203 (5th Cir. 2004) (per curiam)). And "[t]he four public interest factors are: '(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized

interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws.'" *Id.* (quoting *Volkswagen II*, 545 F.3d at 315).

Both prongs of the test are easily satisfied in this case.  Venue and jurisdiction are proper in the Southern District of New York and the District of Columbia, and the remaining factors and the interests of justice strongly weigh in favor of transfer to one of those Districts.

I.   **PLAINTIFFS COULD HAVE BROUGHT THIS ACTION IN THE SOUTHERN DISTRICT OF NEW YORK, OR ALTERNATIVELY, THE DISTRICT OF COLUMBIA**

Both the Southern District of New York and the District of Columbia have subject matter jurisdiction over the case for the same reasons Plaintiffs allege here: Plaintiffs' claims arise under federal law.  *See* AC ¶ 115 (citing 28 U.S.C. §§ 1331, 1337, 15 U.S.C. §§ 15, 26).

In this antitrust action specifically, venue is proper in and all Defendants are subject to personal jurisdiction under the Clayton Act where they are "inhabitants" or where they "transact[] business."  *See* 15 U.S.C. § 22.  That is because the Clayton Act, which provides for venue and jurisdiction in antitrust actions,[3] provides that personal jurisdiction is proper where venue is proper. *See id.*  Accordingly, as venue is proper where a defendant is an "inhabitant" or "transacts business," this point is pivotal for both personal jurisdiction and venue purposes.  *Id.*

Courts have found that being an "inhabitant" under the Clayton Act means "incorporated under the laws of that jurisdiction," and "a corporation transacts business within their forum jurisdictions when a substantial business activity is performed within the jurisdiction with

---

[3]  Section 12 of the Clayton Act confers venue and jurisdiction for "antitrust suits."  *Datamedia Comput. Serv., Inc. v. AVM Corp.*, 441 F.2d 604, 605 (5th Cir. 1971) (applying 12 U.S.C. § 22 to a Sherman Act claim); *see also* 15 U.S.C. § 12 (defining "Antitrust Laws" to which Section 12 applies to include the Sherman Act).

7

continuity of character, regularity, contemporaneous with the service and not looking toward cessation of business." *Mgmt. Insights, Inc. v. CIC Enters., Inc.*, 194 F. Supp. 2d 520, 532–33 (N.D. Tex. 2001) (alteration and citation omitted).

This standard is easily met in both New York, N.Y. and the District of Columbia.  For the Post, the majority of its business functions are performed from the District of Columbia and a smaller, although substantial, portion of its business functions are performed from New York, N.Y. Post Decl. ¶¶ 3, 4.  Within the United States, The AP and Reuters are principally operated out of New York, N.Y., and each has a smaller, although substantial, office in the District of Columbia. AP Decl. ¶¶ 4, 5; Reuters Decl. ¶¶ 4, 5.  Lastly, the BBC is an inhabitant of the District of Columbia.  BBC Decl. ¶ 10.

Accordingly, because Defendants all "transact business" in or are "inhabitants" of the District of Columbia, venue and personal jurisdiction are proper there.  Post Decl. ¶¶ 3, 4; AP Decl. ¶ 5; Reuters Decl. ¶¶ 4, 5; BBC Decl. ¶ 10.[4]  In addition, the Post, The AP, and Reuters transact business in New York, while the BBC will not contest jurisdiction in New York for purposes of this case if the action is transferred there.  *See id.*; BBC Motion at 20 n.2.

For these reasons, the case indisputably could have been brought in the transferee forums.

## II.    PLAINTIFFS' CHOICE OF FORUM IS ENTITLED TO NO DEFERENCE

"Public and private factors aside, a court must also independently consider how much weight to assign a plaintiff's choice of forum."  *Seramur v. Fed. Ins. Co.*, No. 3:19-CV-1678-B, 2019 WL 3253369, at *2 (N.D. Tex. July 19, 2019) (citation omitted).  While a plaintiff's choice of forum is normally entitled to deference, when "Plaintiff does not reside in Texas [and] the

---

[4] Alternatively, should the Court find Clayton Act jurisdiction lacking, all Defendants agree to consent to personal jurisdiction in the District of Columbia for purposes of this case.

operative facts did not occur in Texas . . . Plaintiffs choice of forum should be afforded no deference." *Great-W. Life & Annuity Ins. Co.*, 2010 WL 11582977, at *1; *see also Robertson v. M/V Cape Hunter*, 979 F. Supp. 1105, 1109 (S.D. Tex. 1997) ("Plaintiff's choice of forum is entitled to little or no deference . . . [when the] case simply has no significant connection to th[e] forum."); *Siverston v. Clinton*, No. 3:11-CV-0836-D, 2011 WL 4100958, at *4 (N.D. Tex. Sept. 14, 2011) ("[W]hen she files suit outside her home forum, the weight accorded to the choice is diminished.").  Such is the case here.

First, the Northern District of Texas is not Plaintiffs' home.  In fact, no Plaintiff lives within the state of Texas at all.  AC ¶¶ 39–109; *see supra* Background Section A.

Second, none of the operative facts occurred within the Northern District of Texas, or Texas more broadly.  *Great-W. Life & Annuity Ins. Co.*, 2010 WL 11582977, at *1 (no deference where operative facts occurred outside of Texas); *Robertson*, 979 F. Supp. at 1109 (little or no deference where operative facts occurred outside of Texas); *Monsanto Co. v. Ledbetter*, No. 3:07-CV-1881-N, 2008 WL 11347430, at *2 (N.D. Tex. Mar. 10, 2008) ("[N]one of the operative facts occur within the forum of plaintiff's original selection, his choice is entitled to only minimal consideration.") (quoting *Greiner v. Am. Motor Sales Corp.*, 645 F. Supp. 277, 279 (E.D. Tex. 1986)).  Here, Plaintiffs do not and cannot point to any material Trusted News Initiative facts that occurred in Texas.  *See, e.g.*, AC ¶¶ 319–353 (describing the Trusted News Initiative's "parallel" conduct).

## III.  THE 1404(A) FACTORS STRONGLY SUPPORT TRANSFER

The 1404(a) factors strongly support transfer of this case.  Five factors support transfer (all private factors and the first public factor) and three are neutral (the last three public factors).  There is not a single factor that weighs against transfer.  Below, Defendants analyze each of the factors in the typical order, though the "most important" factors in this case are the third and fourth private-

interest factors (witness convenience and access, because Defendants anticipate this case will involve numerous third-party witnesses for whom the transferee forums are far more convenient, and practical considerations, because the Court lacks personal jurisdiction over the BBC).

### A.     The Private Factors Support Transfer

#### 1.     Access to Sources of Proof

The first private factor—the relative ease of access to sources of proof—weighs in favor of transfer.  That is because "this factor weighs in favor of the venue where the majority of relevant documents are physically kept."  *Rodriguez*, 2021 WL 10315900, at *2 (noting "the convenience of technology and e-discovery does not make this factor superfluous" and "this factor weighs in favor of the venue where the majority of relevant documents are physically kept").

Just like in *Rodriguez*, the "greater volume" of relevant documents will be within Defendants' control, as it is Defendants' conduct that is allegedly at issue.  *See id.* (citation omitted).  Defendants' documents are generally controlled at their (or their parent's) respective headquarters in New York, the District of Columbia, and London.  *See* Post Decl. ¶ 11; AP Decl. ¶ 13; Reuters Decl. ¶ 12; BBC Decl. ¶ 18.  This supports transfer to a more convenient location that is closer to those documents.  *See, e.g.*, *Rodriguez*, 2021 WL 10315900, at *2 (finding this factor weighed in favor of transfer because the records were presumably kept at headquarters in Georgia); *Uniloc USA, Inc. v. Activision Blizzard, Inc.*, Nos. 6:13-cv-256, 6:13-cv-259, 2014 WL 11609813, at *2 (E.D. Tex. July 16, 2014) (noting that this factor turns on who possesses the greater volume of relevant documents, and that corporate headquarters are presumed to possess the bulk of material related to a corporate party).

As for the Plaintiffs' evidence, it is also not located within Texas.  Such evidence, including evidence of any alleged harm, generally will be at the location of Plaintiffs' residences or principal places of business.  *See Rodriguez*, 2021 WL 10315900 at *2; *Uniloc USA, Inc.*, 2014 WL

11609813, at *2 (corporate headquarters are presumed to be the location of the material related to a corporate party).  But here, no Plaintiff claims their residence or principal place of business to be in Texas.  AC ¶¶ 39–109.  In fact, most Plaintiffs are located in or are much closer to the districts to which Defendants seek transfer.  *See infra* Argument Section III(A)(3)(b); AC ¶¶ 39, 43, 42, 52, 60, 74, 68, 86, 95, 102.  For example, Children's Health Defense is located in New Jersey and Robert F. Kennedy, Jr. is located in New York.  AC at 8 ¶ 39, 9 ¶ 43.  These facts also support transfer.

## 2.     Availability of Compulsory Process To Secure Witness Attendance

The second private factor—the availability of compulsory process to secure the attendance of witnesses—also weighs in favor of transfer.

"A venue that has absolute subpoena power for both deposition and trial is favored over one that does not."  *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-CV-4387-K, 2015 WL 13870507, at *3 (N.D. Tex. July 23, 2015).  A subpoena may command a person to attend a trial, hearing, or deposition if it is within 100 miles of where the person resides, is employed, or regularly transacts business in person.  Fed. R. Civ. P. 45(c)(1)(A).  The analysis is primarily concerned with nonparties (including former employees) who may need to be subpoenaed to testify.  *See, e.g.*, *id.*; *Mt. Hawley Ins. Co. v. TFP Properties. III, LLC*, No. 3:18-CV-00659-K, 2018 WL 10419785, at *3 (N.D. Tex. Aug. 29, 2018).

Here, all relevant nonparty witnesses are more than 100 miles from the Court, and many are within 100 miles of the Southern District of New York or the District of Columbia.

### a.     No Relevant Witnesses Are Located Within 100 Miles of This District

There are no nonparty witnesses within 100 miles of Amarillo, Texas who Defendants believe have any relevant information as to the Trusted News Initiative, much less witnesses who

Defendants would *expect* to call to testify.  Plaintiffs have similarly identified no witnesses in the Complaint who live in Texas, much less within 100 miles of Amarillo, Texas.

> **b.    Multiple Relevant Witnesses Are Located Within 100 Miles of Either the Southern District of New York or the District of Columbia**

In contrast, a number of relevant nonparty witnesses are located within 100 miles of the courts to which Defendants seek transfer.

The following nonparties (including former employees) are located within 100 miles of the Southern District of New York:

- Steve Adler, former Reuters Editor in Chief, and Michael Freidenberg, former Reuters President.  Messrs. Adler and Freidenberg reside in New York (or within 100 miles thereof) and, if called, would be expected to testify about Reuters' participation in the TNI.  Reuters Decl. ¶ 11.

The following nonparty (a former employee) is located within 100 miles of the District of Columbia area:

- Greg Barber, former Post Director of News Product.  Mr. Barber served as the Post's liaison to the Trusted News Initiative while he was employed at the Post, until his departure in October 2021.  *See* Post Decl. ¶ 7.  Mr. Barber resides in the District of Columbia area, in Arlington, Virginia.  *See id.* ¶ 9.  Mr. Barber is expected to testify about the Post's participation in the TNI.  *Id.* ¶¶ 5–6, 12.

Accordingly, this factor heavily weighs in favor of transfer considering there are no nonparties over which this Court has subpoena power, while Defendants' proposed venues have subpoena power over multiple witnesses.

### 3.    Witness Convenience and Access

The third private factor—the cost of attendance for party and nonparty witnesses—weighs strongly in favor of transfer.

As this Court has noted, this is "probably the single most important factor in the transfer analysis." *Qualls*, 594 F. Supp. 3d at 824 (citation omitted); *see Rodriguez*, 2021 WL 10315900, at *3 (finding this factor favored transfer).  The analysis considers all witnesses, with special attention given to nonparty witnesses.  *See, e.g.*, *Allcapcorp Ltd. Co. v. CHC Consulting*, No. 3:17-CV-0757-S-BH, 2019 WL 417995, at *6–7 (N.D. Tex. Jan. 10, 2019) (noting both nonparty and party witness convenience must be analyzed, but nonparty witnesses' convenience is "accorded the most weight") (citation omitted), *report and recommendation adopted*, No. 3:17-CV-0757-S-BH, 2019 WL 415819 (N.D. Tex. Feb. 1, 2019); *Vargas v. Seamar Divers Int'l, LLC*, No. 2:10-CV-178-TJW, 2011 WL 1980001, at *7 (E.D. Tex. May 20, 2011) ("The Court must consider the convenience of both the party and non-party witnesses.") (citing *Volkswagen I*, 371 F.3d at 204).

"When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05. "Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." *Id.* at 205; *see Kaneka Corp. v. SKC Kolon PI, Inc.,* No. 1:10-CV-430, 2011 WL 13134647, at *5–6 (E.D. Tex. Mar. 30, 2011) (granting motion to transfer to California, noting Asian witnesses' inconvenience "in terms of travel time and cost of airfare to Texas").  "The court gives more weight to those specifically identified witnesses and affords less weight to vague assertions that witnesses are likely located in

a particular forum." *See Rodriguez*, 2021 WL 10315900, at *2 (alterations and citations omitted) (quoting *Mt. Hawley Ins. Co.*, 2018 WL 10419785, at *3).

Here, the Southern District of New York or the District of Columbia would both be substantially more convenient for the likely witnesses in the case.

###### a. Defendants Have Identified Several Witnesses Likely To Have Relevant Testimony in the Case

In addition to the witnesses referenced in the second factor, there are a number of additional witnesses who will likely testify to Defendants' involvement in the Trusted News Initiative.[5] None of the witnesses live anywhere near Texas.  In general, the overwhelming majority of these witnesses are located in New York, the District of Columbia, or London.  For witnesses from each of these locations, the Southern District of New York or the District of Columbia are significantly more convenient forums.

A number of current and former employees from The AP, the BBC, the Post, and Reuters possess relevant information as to the organizations' involvement in the Trusted News Initiative. Specifically, the individuals who at one time or another served as Defendants' liaisons to the initiative—Greg Barber (former) and Peter Wallsten from the Post; John Daniszewski and Barbara Whitaker from The AP; Jane Barrett, Hazel Baker (former), and Stephanie Burnett from Reuters; and Jessica Cecil formerly from the BBC—would be key witnesses as they possess the information most relevant to the claims (*i.e.*, Defendants' participation in the Trusted News Initiative).  As such, the convenience of these witnesses is significant and weighs highly in favor of transfer. *Rosemond v. United Airlines, Inc.*, No. H-13-2190, 2014 WL 1338690, at *3 (S.D. Tex. Apr. 2,

---

[5] Defendants' identification of relevant witnesses in this Motion is based on an understanding of the current record.  Should this case progress into discovery, Defendants reserve the right to identify additional or different witnesses.

2014) ("[T]he convenience of one key witness may outweigh the convenience of numerous less important witnesses.") (quoting *Mid-Continent Cas. Co. v. Petroleum Sols., Inc*., 629 F. Supp. 2d 759, 763 (S.D. Tex. 2009); *Fausto v. Parko Grp., LLC*, No. 3:18-CV-00323, 2019 WL 6686678, at *3 (S.D. Tex. Oct. 31, 2019) (same).  In addition to these current and former employee witnesses, Defendants anticipate that this case will involve significant testimony from non-party witnesses who participated in the Trusted News Initiative on behalf of non-party technology companies, such as Google, Meta, Microsoft, and Twitter.  The testimony of these platform witnesses will be highly relevant to the processes involved in the alleged decisions to remove Plaintiffs from their services, including the content policies and other terms of service at issue, and Defendants' lack of involvement in these decisions.

Defendants expect the following District of Columbia area residents to testify:

- Former Post (nonparty): Greg Barber, former Post Director of News Product.  As noted above, Mr. Barber served as the Post's liaison to the Trusted News Initiative while he was employed at the Post in the District of Columbia, until his departure in October 2021.  *See* Post Decl ¶¶ 7, 11.  Mr. Barber resides in the District of Columbia area, in Arlington, Virginia, and is expected to testify about the Post's participation in the TNI.  *Id*. ¶¶ 9, 11.

- Current Post: Peter Wallsten, Post Politics Editor and Cameron Barr, Post Senior Managing Editor.  Mr. Wallsten served as the Post's liaison to the Trusted News Initiative after Mr. Barber departed the company from late 2021 to present, and Mr. Barr participated in a virtual Trusted News Initiative conference in March 2021.  Mr. Wallsten and Mr. Barr reside in the District of Columbia and are expected to testify about the Post's participation in the TNI.  Post Decl. ¶¶ 5–6, 12.

Defendants expect the following New York area residents to testify:

- Current AP: John Daniszewski, AP Vice President and Editor at Large for Standards, and Barbara Whitaker, AP New York Editor, Fact Check Desk.  Mr. Daniszewski and Ms. Whitaker reside in New York (or within 100 miles thereof) and are expected to testify about The AP's participation in the TNI.  AP Decl. ¶¶ 6, 8, 11.

- Former Reuters (nonparty): Steve Adler, former Reuters Editor in Chief, and Mr. Michael Freidenberg, former Reuters President.  Both reside in New York (or within 100 miles thereof) and are expected to testify about Reuters' participation in the TNI.  Reuters Decl. ¶ 11.

Defendants would also expect the following European residents to testify:

- Current BBC: Every potential witness in this action that is currently affiliated with the BBC is located in the United Kingdom.  BBC Decl. ¶ 20.  These witnesses are expected to testify about the BBC's participation in the TNI.  *Id.*

- Former BBC (nonparties): Of the three former BBC employees who are named in the Complaint, upon information and belief Tony Hall and Jessica Cecil are current residents of the United Kingdom, and Jamie Angus is a current resident of the United Arab Emirates. BBC Decl. ¶ 19.  They were each involved with the creation and leadership of the TNI and would be in a position to testify on the BBC's creation and participation in the TNI.  *Id.*

- Current Reuters: Jane Barrett, Reuters Global Editor, Media News Strategy, and Stephanie Burnett, Reuters Digital Verification Editor.  Ms. Barrett is a resident of England, while Ms. Burnett is a resident of the Netherlands.  Reuters Decl. ¶¶ 2, 9.  These witnesses are expected to testify about Reuters' participation in the TNI.  *Id.* ¶¶ 6–7.

- Former Reuters (nonparty): Hazel Baker, former Reuters Head of Digital Newsgathering and Verification.  Upon information and belief, Ms. Baker is a resident of England.  Reuters

Decl. ¶ 8.  Ms. Baker is expected to testify about Reuters' participation in the TNI.  *Id.* ¶¶ 6–7.

- Platform Witnesses (nonparties): All key TNI representatives of the platform members are residents of the United Kingdom, including TNI representatives from Google, Meta, Microsoft, and Twitter.  BBC Decl. ¶ 24.  These witnesses would be expected to testify to their alleged moderation of Plaintiffs' content, including the relevant policies and other terms of service at issue, and Defendants' lack of involvement in these decisions.  *Id.*

> **b.**  **The Southern District of New York or the District of Columbia Are Substantially More Convenient Venues for These Witnesses**

As to all identified witnesses above, either the Southern District of New York or the District of Columbia would be a substantially more convenient forum than Amarillo, Texas.  Amarillo is over 4,800 miles from London, over 1,700 miles from New York, N.Y., and over 1,500 miles from the District of Columbia.  *See Patrick v. Martin*, No. 2:16-CV-216-D-BR, 2020 WL 4040969, at *37 (N.D. Tex. July 16, 2020) (Kacsmaryk, J.) (taking judicial notice of the distance between two prisons); *Moss v. Lockheed Martin Corp.*, No. 3:10-cv-1659-M, 2011 WL 197624, at *2 n.4 (N.D. Tex. Jan. 18, 2011) (taking judicial notice of geographical distance calculated using maps.com).

Conversely, New York, N.Y. and the District of Columbia are closer geographically to most witnesses.  Travel between New York, N.Y., the District of Columbia, and London is substantially more efficient than travel as between any of those cities and Amarillo, Texas.

As set forth in the table below, if the case were transferred to New York, N.Y., travel would be eliminated entirely for New York witnesses, and would be reduced for the District of Columbia witnesses by about 80%, and for London witnesses by almost half when compared to travel to Amarillo, Texas.  Alternatively, if the case were transferred to the District of Columbia, travel would be eliminated entirely for District of Columbia witnesses, and would be reduced for New

York witnesses by 80%, and for London witnesses by almost half.  Courts consider the travel burden on international witnesses as an important basis for transfer.  *See, e.g.*, *Kaneka Corp.*, 2011 WL 13134647, at *6 (granting transfer from the Eastern District of Texas to the Central District of California, which would be more convenient for witnesses from Asia).

| Court/Location[6] | Distance from London (miles) | Distance from New York, N.Y. (miles) | Distance from the District of Columbia (miles) |
| --- | --- | --- | --- |
| Amarillo, TX | 4,800 | 1,700 | 1,600 |
| New York, N.Y. | 3,650 | 0 | 250 |
| District of Columbia | 3,450 | 250 | 0 |

| Court/Location[7] | Flight Time from London | Flight Time from New York, N.Y. | Flight Time from the District of Columbia |
| --- | --- | --- | --- |
| Amarillo, Texas | Over 13 hours | Over 6 hours | Over 5.5 hours |
| New York, N.Y. | 8 hours | 0 | 1 hour 10 minutes |
| District of Columbia | 8.5 hours | 1 hour 10 minutes | 0 |

The Southern District of New York or the District of Columbia would also be more convenient for many of the Plaintiffs.  *See Rockefeller Univ. v. Centocor, Inc.*, No. 2-04-CV-168 (TJW), 2005 WL 8160534, at *2 (E.D. Tex. Mar. 21, 2005) (considering "convenience of the plaintiffs" when analyzing this factor but noting "the convenience of the parties is accorded less weight . . . than . . . non-party witnesses").  Both Children's Health Defense and Robert F. Kennedy, Jr. are located within the New York metropolitan area.  *See Potts v. Cameron Offshore Boats, Inc.*, 401 F. Supp. 2d 733, 739 (S.D. Tex. 2005) ("Plaintiff cannot complain of a transfer to his home District.").  On information and belief, transfer to the Southern District of New York or the District of Columbia would also be substantially more efficient for Erin Elizabeth Finn (Florida), Ben Swann (Georgia), and Dr. Joseph Mercola (Florida).  And for the remaining

---

[6] Approximate directions from each city center.  *See, e.g.*, *Directions from Amarillo, Texas to New York City, N.Y.*, Google Maps, https://shorturl.at/mtzX7.

[7] Approximate most-direct flight times from each city's airport.  *See, e.g.*, *Flights from New York, NY to Amarillo, Texas*, Google Maps, https://shorturl.at/evzJZ.

Plaintiffs—TrialSite, Inc. (Utah), Jim Hoft (Missouri), Dr. Ben Tapper (Nebraska), Creative Destruction Media, LLC (Wyoming), and Ty and Charlene Bollinger (Tennessee)—the distance is comparable.

Thus, for eight out of the eleven Plaintiffs, travel to both New York, N.Y. and the District of Columbia is more convenient than travel to Amarillo, Texas. For Plaintiffs from Florida, Missouri, Nebraska, Ohio, Tennessee, New Jersey, and New York flights to either the District of Columbia or New York, N.Y. are all under three hours (and in many cases under two hours).

Because "[t]ransferring the case . . . will be significantly more convenient for the vast majority, if not all, [of the] material witnesses in this case[, t]his factor heavily favors transfer." *Weinstein*, 2007 WL 3118363, at *3; *see also, e.g., Fin. Cas. & Sur., Inc. v. Zouvelos*, No. H-11-2509, 2012 WL 2886861, at *6 (S.D. Tex. July 13, 2012) (transferring case with "nonparty witnesses located in New York" because "[i]t will be significantly more convenient for them to have the case litigated in New York, where they reside").

### 4. Other Practical Considerations—Lack of Personal Jurisdiction over the BBC

The fourth private factor—all other practical considerations that affect whether a case is easy, expeditious, and inexpensive to litigate in the forum—weighs heavily in favor of transfer. In particular, severing a case as a result of a lack of jurisdiction is strongly disfavored. *See, e.g., Def. Distributed v. Bruck*, 30 F.4th 414, 429 (5th Cir. 2022); *Rodriguez*, 2021 WL 10315900, at *3. Severance "requires two courts to engage in the work of one, prompting serious concerns about duplication of judicial resources, the consistency of rulings, and litigation costs." *Def. Distributed*, 30 F.4th at 429; *see also Rodriguez*, 2021 WL 10315900, at *3. As this Court has previously emphasized, "[s]everance is inappropriate when the court believes that it would only

result in delay, inconvenience, or added expense." *Rodriguez*, 2021 WL 10315900, at *3 (internal quotation marks omitted) (granting motion to transfer).

Here, the Court lacks personal jurisdiction over the BBC, as explained in the BBC's concurrent Motion To Dismiss and brief in support thereof, which Defendants incorporate by reference.  ECF Nos. 51–52.  Accordingly, "for this Court to maintain this action, it would need to sever" the BBC from the case, which "would be inefficient and delay judicial proceedings."  *Id*. If the BBC were severed, Plaintiffs might attempt to sue the BBC in another venue where the BBC is subject to personal jurisdiction.  As in *Rodriguez*, this problem would be avoided and judicial economy would be served by transfer to a venue with personal jurisdiction over all Defendants. *See id.*; *Def. Distributed*, 30 F.4th at 429.

### B.      The Public Factors Support Transfer

#### 1.      Court Congestion

The first public factor—the administrative difficulties flowing from court congestion—is neutral.

This first public-interest factor concerns "whether there is an appreciable difference in docket congestion between the two forums."  *InfoGation Corp. v. Google LLC*, No. 6:20-CV-00366-ADA, 2021 WL 5547070, at *5 (W.D. Tex. Apr. 29, 2021) (citations omitted); *USPG Portfolio Two, LLC v. John Hancock Real Est. Fin., Inc.*, No. 3:10-CV-2466-D, 2011 WL 1103372, at *5 (N.D. Tex. Mar. 25, 2011) (granting transfer).  "The relevant inquiry under this factor is the speed with which a case can come to trial and be resolved."  *Id.* (cleaned up).  "[C]ourts commonly consider the Federal Judicial caseload statistics" to determine whether one court's docket is more congested than another's.  *USPG Portfolio Two, LLC*, 2011 WL 1103372, at *5.

Here, the relevant Federal Judicial caseload statistics establish that the average time to dispose of cases in the Southern District of New York or the District of Columbia is generally

faster than the average time to dispose of cases in the Northern District of Texas.  As of September 2022, the median time from filing to disposition was 6.1 months in the Southern District of New York, 5.6 months in the District of Columbia, but 56 months in the Northern District of Texas. U.S. Dist. Ct. – Nat'l Jud. Caseload Profile at 2, 11, 34, Admin. Off. of the U.S. Cts. (Sept. 2022). While it is possible that this disparity in median time between Defendants' proposed transferee courts and this District is an unusually high outlier, Defendants note that the September 2021 statistics similarly show a significant disparity between Defendants' proposed transferee courts and this District.  In September 2021, the median time from filing to disposition was 6.1 months in the Southern District of New York, 5.6 months in the District of Columbia, but 19.4 months in the Northern District of Texas.  U.S. Dist. Ct. — Nat'l Jud. Caseload Profile at 2, 11, 34, Admin. Off. of the U.S. Cts. (Sept. 2021).  Although these may be the statistics for the Northern District of Texas generally, Defendants have no reason to believe that these times to disposition reflect current practice in the Amarillo Division.  Accordingly, this factor should be considered as neutral.

### 2.     Local Interest

The second public factor—the local interest in having localized interests decided at home—weighs in favor of transfer.

This factor is based on the premise that jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation.  *All. Transp. & Logistics, LLC v. G&J Truck Sales, Inc.*, No. 3:20-CV-3451-B, 2021 WL 5882820, at *4 (N.D. Tex. Dec. 13, 2021) (citing *Volkswagen I*, 371 F.3d at 206) (granting transfer).  "For this reason, the 'local interest' public-interest factor 'generally favors the venue where the acts giving rise to the lawsuit occurred.'"  *Id.* (quoting *CUPP Cybersecurity LLC v. Symantec Corp.*, No. 3:18-CV-01554-M, 2019 WL 1070869, at *9 (N.D. Tex. Jan. 16, 2019) (granting transfer)).

The events giving rise to this action (Defendants' involvement in the Trusted News Initiative) occurred in the transferee districts for the reasons described in the sections above.  *See supra* Background Section C.  Further, New York, N.Y. or the District of Columbia would be "actually affected" by the resolution of the case because multiple Defendants are headquartered there or have offices there.  *See Rodriguez*, 2021 WL 10315900, at *4 (finding Georgia would be actually affected by the result of the case because defendant was headquartered there); *TitanUrbi21, LLC v. GS Oilfield Servs., LLC*, No. 2:20-CV-069-Z, 2020 WL 5066943, at *6 (N.D. Tex. Aug. 27, 2020) (Kacsmaryk, J.) (finding a local interest in San Antonio because the business was headquartered there); *Volkswagen I*, 371 F.3d at 203 (no local interest in location where there is no factual connection with the events of the case).  New York is further affected because Plaintiff Robert F. Kennedy, Jr. is located in that jurisdiction and allegedly felt harm in the state. AC ¶ 43.

Amarillo, by contrast, has no connection to this case, as Plaintiffs are residents of other cities, with no connection to Texas, and none of the underlying conduct took place in Amarillo (or Texas for that matter).  Amarillo, and Texas at large, have little if any local interest in the resolution of this case.  For that reason, this factor supports transfer.  *See Alliance Transp. & Logistics, LLC*, 2021 WL 5882820, at *4; *CUPP Cybersecurity LLC*, 2019 WL 1070869, at *9.

### 3.  Familiarity with Law

The third public factor—the familiarity of the forum with the law that will govern the case—is neutral, as federal courts are equally familiar with federal statutes.  *See Rodriguez*, 2021 WL 10315900, at *4 (citing *LeBlanc v. C.R. England, Inc.*, 961 F. Supp. 2d 819, 833 (N.D. Tex. Aug. 13, 2013) (indicating that federal courts are equally familiar with federal statutes); *Modisett v. Delek Refin., Ltd.*, No. 2:18-CV-00389-JRG-RSP, 2019 WL 2395377, at *5 (E.D. Tex. June 5, 2019) (same)); *see also Ayala v. Waste Mgmt. of Ariz., Inc.*, No. CV H-19-196, 2019 WL 2085106, at *7 (S.D. Tex. May 10, 2019) ("The proposed transferee federal courts would be 'just as familiar

with the FLSA and just as competent to hear this type ... claim as this [c]ourt.'" (alterations in original) (citation omitted)).  Accordingly, as Plaintiffs bring only claims under the Sherman Act, a federal statute, all three venues are equally equipped to address Plaintiffs' claims.

### 4.    Conflict of Laws

The fourth public factor—the avoidance of unnecessary problems of conflict of laws—is neutral for the same reasons as above.  Federal antitrust law clearly governs the issues in this case and no conflict of laws issues are expected.  *See Rogers v. Burlington N. Santa Fe Corp.*, No. 2-04-CV-254 (TJW), 2005 WL 8161063, at *4 (E.D. Tex. Jan. 31, 2005) (where a case is governed by a federal statute, this factor is inapplicable in the transfer analysis); *Robertson v. Kiamichi R. Co.*, 42 F. Supp. 2d 651, 659 (E.D. Tex. 1999).

## <u>CONCLUSION</u>

For the foregoing reasons, both the private- and public-interest factors favor transfer. Accordingly, Defendants respectfully request transfer to the United States District Court for the Southern District of New York, or in the alternative the District of Columbia, for the conveniences of all Parties and nonparty witnesses and in the interests of justice.

23

Dated: April 18, 2023

Respectfully submitted,

/s/ Leslie E. John
Leslie E. John (*pro hac vice*)
johnl@ballardspahr.com
Elizabeth P. Weissert (*pro hac vice*)
weisserte@ballardspahr.com
Kayla R. Martin (*pro hac vice*)
martinkr@ballardspahr.com
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Tel: (215) 665-8500; Fax: (215) 864-8999

Jay Ward Brown (*pro hac vice*)
brownjay@ballardspahr.com
Ballard Spahr LLP
1909 K Street N.W., 12th Floor
Washington, D.C. 20006
Tel: (202) 661-2200; Fax: (202) 661-2299

Timothy C. Williams (SBN 24067940)
tim.williams@sprouselaw.com
Sprouse Shrader Smith PC
701 S Taylor Street, Suite 500
Amarillo, TX 79101
Tel: (806) 468-3346; Fax: (806) 373-3454

*Attorneys for The Associated Press*

/s/ Justina Sessions
Justina Sessions (*pro hac vice pending*)
jsessions@wsgr.com
Wilson Sonsini Goodrich & Rosati
One Market Plaza, 1 Market Street Suite 3300
San Francisco, CA 94105
Tel: (415) 947-2000; Fax: (650) 493-6811

Jeffrey C. Bank (*pro hac vice pending*)
jbank@wsgr.com
Wilson Sonsini Goodrich & Rosati
1700 K Street, N.W., 5th Floor
Washington, D.C. 20006
Tel: (202) 973-8800; Fax: (202) 973-8899

/s/ John E. Schmidtlein
John E. Schmidtlein (*pro hac vice*)
jschmidtlein@wc.com
Thomas G. Hentoff (*pro hac vice*)
thentoff@wc.com
Nicholas G. Gamse (*pro hac vice*)
ngamse@wc.com
Kathryn E. Garza (*pro hac vice*)
kgarza@wc.com
Williams & Connolly LLP
680 Maine Avenue, S.W.
Washington, D.C. 20024
Tel: (202) 434-5000; Fax: (202) 434-5029

Thomas C. Riney (SBN 16935100)
tom.riney@uwlaw.com
C. Jason Fenton (SBN 24087505)
jason.fenton@uwlaw.com
Underwood Law Firm, P.C.
500 S. Taylor Street, Suite 1200
Amarillo, TX 79101
Tel: (806) 379-5613; Fax: (806) 379-0316

*Attorneys for WP Company LLC*

David M. Russell  (SBN 17409300)
david@srlawtx.com
Smithee & Russell, LLP
320 S. Polk Street, Suite 920
Amarillo, TX 79101
Tel: (806) 322-9200; Fax: (806) 322-9201

*Attorneys for Reuters News & Media Inc.*

## <u>CERTIFICATE OF CONFERENCE</u>

The undersigned counsel hereby certifies that on or before the 18th day of April 2023, counsel for Defendants conferred with counsel for all Parties.  The British Broadcasting Corporation consents to this motion.  Plaintiffs do not consent to the motion.

*/s/ John Schmidtlein*
John E. Schmidtlein

## <u>CERTIFICATE OF SERVICE</u>

The undersigned Counsel hereby certifies that on the 18th day of April 2023, notice of the foregoing pleading was provided via the CM/ECF system to the counsel of record.  In addition, notice was provided via email to the following counsel.

*/s/ John Schmidtlein*_____
John E. Schmidtlein

Jed Rubenfeld
rubenfeldjed@gmail.com
1301 Forest Road
New Haven, CT 06515